IN THE UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

IN RE: LIVING HOPE SOUTHWEST         CASE NO. 4:06-bk-71484
      MEDICAL SERVICES, LLC.,           (CHAPTER 7)

      Debtor.

RENEE S. WILLIAMS, TRUSTEE                                    PLAINTIFF

VS.                                      4:10-ap-07037

PINEWOOD ENTERPRISES, L.C.                                    DEFENDANT

## MEMORANDUM OPINION

On July 18, 2006, Living Hope Southwest Medical Services, LLC (Debtor) filed a voluntary petition for relief under the provisions of Chapter 11 of the United States Bankruptcy Code. On August 15, 2008, the case was converted to a proceeding under Chapter 7 of the United States Bankruptcy Code. Renee S. Williams was appointed Chapter 7 Trustee (Trustee) on August 18, 2008.

The Trustee filed this complaint on February 18, 2010, for injunctive relief asking this Court to enjoin Pinewood Enterprises, L.C. (Pinewood) from pursing litigation in Miller County against Living Hope Southeast, LLC (LHSE) and Mike Grundy (Grundy). A trial on the merits was held in Texarkana, Arkansas, on January 19, 2011. After trial, the matter was taken under advisement. Both parties have submitted post trial briefs.

The matter before the Court is a core proceeding pursuant to 28 U.S.C. 157(b) and the

Court may enter a final judgment in the case. The following shall constitute the Court's findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052.

I.

FACTS

On February 2, 2009, the Trustee filed a different adversary proceeding (09-ap-7023) on behalf of the Debtor against LHSE, David Kimbro Stephens (Kimbro), Grundy, and Maxwell Dean Hill, Sr. (Hill). The Trustee filed a second amended complaint on February 20, 2009, against the same defendants. (Pl. Ex. 13.) The Trustee also incorporated by reference the allegations contained in a separate action she brought (09-ap-7025) which named as defendants Kimbro, Daphne Alice Stephens (Alice), James O. "Jimmy" Peabody, Sam Ruma, Stephens & Co., Inc., and Veritas Limited Partnership. (Pl. Ex. 13, para. 26.)

The complaint in 09-ap-7023 alleges a vast array of legal theories against all of the defendants. These include constructive trust, unjust enrichment, alter ego, turnover of property, and an accounting. The statutes cited included 11 U.S.C. § 542(b) (turnover); 11 U.S.C. § 548 (actual & constructive fraud); 11 U.S.C. § 549 (unauthorized post petition transfer); 11 U.S.C. § 544(b) (strong arm provisions); and 28 U.S.C. § 3301 (federal debt collection procedures). These theories are alleged against all the defendants both specifically and in general.

The complaint also makes allegations against Hill for actual fraud pursuant to 11 U.S.C. § 548(a); constructive fraud pursuant to 11 U.S.C. § 548(a); and default on a loan owed to the Debtor. The complaint incorporates by reference all of the allegations made in Adversary Proceeding Numbers: 09-ap-7010, 09-ap-7017, 09-ap-7018, 09-ap-7019, 09-ap-7020, 09-ap-7021, 09-ap-7022, 09-ap-7025 and 09-ap-7026. Finally, the complaint alleges that all applicable

statutes of limitation contained in 11 U.S.C. § 546(a) should be tolled because of fraudulent conduct by Kimbro and Alice.

The relevant factual allegations made against LHSE in 09-ap-7023 include:

13. Kimbro is believed to be the principal owner of Southeast.
14. Kimbro used Debtor's funds to pay Southeast expenses which was an abuse and misuse of Debtor's funds.
15. Kimbro used Debtor's employees to perform work for Southeast.
16. Kimbro represented that Southeast was an affiliate of Debtor.
17. Kimbro is the managing member of Southeast.
    . . .
23. On information and belief, Southeast is operating the facility in Hamburg for Delta.
24. On information and belief, Southeast is operating other health care facilities and is engaged in providing behavioral, mental health, and other services directly to schools in Arkansas where Debtor once provided those same services.
25. Kimbro used the financial and human resources of Debtor to form and operate Southeast at the same time that Debtor was operating as a Debtor in Possession in direct competition with Debtor.
26. The allegations of *Renee S. Willliams, Trustee v. David Kimbro Stephens, et al, AP No. 4:09-ap-7025*, are incorporated by reference. Kimbro committed pre-petition fraud by transferring over Two Million Dollars to New Boston. He committed post-petition fraud by transferring Debtor's funds to Southeast and using Debtor's human and financial resources to operate Southeast which is actually the continuation of Debtor's own business. Debtor is in fact now operating as Southeast.
    . . .
28. Southeast was formed with Debtor's financial and human resources for Kimbro's benefit so it could operate part of Debtor's business during and after Debtor filed its petition for relief. It is operated by some of the former employees of Debtor and at some of the same locations where Debtor formerly operated its places of business in Little Rock, Pine Bluff and other locations in Southeast Arkansas.
29. Kimbro, as owner of Southeast, has been unjustly enriched at Debtor's expense as alleged above. The Court should construct a trust on Southeast in favor of Debtor and find that all assets and income of Southeast are property of Debtor's estate and subject to turnover pursuant to 11 U.S.C. § 542, and order Southeast to provide Plaintiff with a complete accounting of Southeast's operations from the date it was formed.
30. In order to protect the integrity and safety of Southeast's assets and income, the Court should, pursuant to its powers granted by Rule 7064,

>
> issue a preliminary injunction or other equitable relief which will prevent the dissipation or concealment of Southeast's assets while this suit is pending. Otherwise, Plaintiff will suffer irreparable harm.
>
> . . .
>
> 50. During the time Debtor operated as a Debtor in Possession, Debtor transferred funds to Southeast although it had no legal duty or obligation to Southeast.
>
> . . .
>
> 52. In addition to the above, Plaintiff believes, and therefore alleges, other transfers were made to Southeast, and, just as importantly, Debtor's human resources were used to operate Southeast at the same time Debtor operated as a Debtor in Possession, and after Debtor was converted to a Chapter 7.
>
> 53. If the Court does not grant the requested relief under Count I, Plaintiff seeks to avoid the above transfers as unauthorized post-petition transfers pursuant to 11 U.S.C. §549.
>
> 54. As authorized by 11 U.S.C. §550(a), Plaintiff seeks judgment against Southeast and Kimbro, jointly and severally, in the amount established by the evidence plus her costs and pre and post-judgment interest.
>
> . . .
>
> 70. Kimbro attempted to conceal and did conceal Debtor's Chapter 11 transfers and pre Chapter 11 transfers from Debtor's creditors as illustrated by the fact that Kimbro testified at his 341(a) examination that there was no connection between Debtor and Southeast.

(Pl. Ex. 13.)

A.

THE SETTLEMENT

On June 3, 2009, the Trustee filed a motion to settle 09-ap-7023 as well as Adversary Proceedings 09-ap-7010, 09-ap-7017, 09-ap-7019, and 09-ap-7025 pursuant to a written settlement agreement. The settlement agreement contains eleven pages and many provisions. The relevant provisions are summarized as follows:

> 1. A. The settling party defendants all agree that the Trustee shall be entitled to a consent judgment of $1,150,000.00 against Kimbro and Alice in this adversary proceeding. The complaint in this adversary proceeding will be dismissed against all defendants except for Hill.
>
> . . .

      B. 2. Kimbro and Alice shall pay the Trustee $750,000.00 in installments and shall commence the payments immediately after entry of an order approving the settlement becomes final and non-appealable.

      . . .

      B. 4. The first $500,000.00 of the judgment would be non-dischargeable as to Kimbro only.

      . . .

      B. 8. After entry of the order approving the settlement entry, of the consent judgment and payment of $150,000.00, the Trustee shall dismiss with prejudice 09-ap-7010, 09-ap-7017, 09-ap-7019, 09-ap-7025. The Trustee will also dismiss with prejudice all defendants except Hill from 09-ap-7023.

      B. 9. As long as Kimbro and Alice are not in default, the Trustee shall forebear all collection remedies against Kimbro and Alice.

      . . .

      B. 15. If Kimbro and Alice are in default for more than thirty days the Trustee will be entitled to enforce all provisions of the consent judgment.

      . . .

      B. 19. To secure payment of the consent judgment, Trustee shall have an inchoate judgment lien on all membership interest of LHSE and all assets owned by and on all income derived from the operation of LHSE. If Kimbro and Alice fail to timely cure the default, the Trustee's inchoate judgment lien shall immediately and automatically ripen into a fully vested and perfected lien on all LHSE membership rights and on all assets and income to the extent such is required to satisfy the balance due on the consent judgment.

(Pl. Ex. 1A.)

The agreement was signed by the Trustee; Kimbro; Alice; LHSE by James D. Smith, Attorney; Stephens & Company by Kevin Keech, Attorney; Veritas Limited Partnership by Kevin Keech, Attorney; AK Tennessee Irrevocable Trust (ATI) by Robert M. Williams, Trustee; Kimbro Stephens Insurance Trust by Alice, Trustee; Alice Stephens Insurance Trust by an ineligible signature, Trustee; Ouachita Limited Partnership by Alice, Trustee; Thomas Streetman, Attorney for Plaintiff; and Kevin Keech, Attorney for Kimbro, Alice, Stephens & Co., Inc., and Veritas Limited Partnership. (Pl. Ex. 1A.)

On July 15, 2009, Pinewood filed a 29-page objection to the Trustee's settlement on numerous grounds, including an objection that the settlement might have some preclusive effect

5

on litigation brought by Pinewood in state court against Kimbro, Alice, and any related entities. (Pl. Ex. 2.) The objection stated Pinewood "has allegations pending in state court to pierce the corporate veil of the Debtor and to hold at least Kimbro liable for the rent owed Pinewood." (Pl. Ex. 2, para. 32.) No mention was specifically made of any proposed cause of action pending against LHSE.

After a two-day hearing on November 13 and 17, 2009, the objection by Pinewood was overruled and an order approving the settlement was entered on November 20, 2010. On November 30, 2009, Pinewood filed a motion to alter or amend the judgment and to make additional findings of fact and conclusions of law. A hearing on Pinewood's motion was held on December 21, 2009, and the motion was denied by order entered January 5, 2010. On January 15, 2010, Pinewood filed a notice of appeal to the United States District Court from the order approving the settlement and the order denying Pinewood's motion to alter or amend the order and for additional findings of fact and conclusions of law.

On March 18, 2011, the District Court for the Western District of Arkansas reversed and remanded the order approving the settlement. The District Court concluded that the Trustee had no standing to bring alter ego/veil piercing claims, and, therefore, was without authority to settle these types of claims. The District Court otherwise approved the settlement. The case was remanded to this Court for proceedings not inconsistent with the District Court's Order.

On May 27, 2011, after notice and a hearing this Court entered a Supplemental Order approving the settlement, specifically excluding any causes of action under any alter ego theory to pierce the corporate veil of the Debtor corporation or any third party corporation or LLC which may only be prosecuted by the creditors of the Debtor.

B.

PINEWOOD'S STATE COURT LAWSUIT

At some point before the Debtor filed for relief on July 19, 2006, Pinewood filed a complaint in the Circuit Court of Miller County, Arkansas, seeking to eject the Debtor from property owned by Pinewood and leased to the Debtor. (Tr. at 85.) The state court action also sought a judgment against the Debtor and Kimbro for $1,300,000.00. (Tr. at 85-86.) Pinewood obtained possession of the premises on July 18, 2006. (Pl. Ex. 7, para 5).

On December 4, 2009, Pinewood filed a motion for a determination that the automatic stay does not apply to Pinewood's state court action against non-debtors or in the alternative for relief from the automatic stay. (Pl. Ex. 4.) At the time of the motion, only the Debtor and Kimbro were defendants in the state court action. The motion for relief from the automatic stay alleged that Pinewood intended to pursue non-debtor but related entities in the pending state court proceeding.[1] (Pl. Ex. 4, para. 7.) Pinewood did not disclose specifically that it intended to pursue LHSE in the state court action. The motion was granted on December 29, 2009.

Thereafter, on January 12, 2010, Pinewood filed an amended complaint in the Miller County action naming as defendants Kimbro, Alice, Living Hope Institute, Inc. (LHI), Kimbro Stephens Insurance Trust, LHSE, Alice Stephens Insurance Trust, Living Hope Healing Waters, Stephens & Co., Inc., Ouachita Limited Partnership, Veritas Limited Partnership, ATI, and Grundy (Pl. Ex. 6.) Among the allegations, Pinewood's amended complaint alleged, "Pinewood

---

[1] Pinewood's motion for relief from the stay seemed unusual since both Pinewood and the Trustee agreed that the automatic stay in the Debtor's case did not apply to actions against non-debtor entities, even if related to the Debtor; therefore, the relief in question was unnecessary. Pinewood's counsel explained she filed the motion as a precautionary matter. (Pl. Ex. 5A.)

7

has been granted relief of [sic] the automatic stay of 11 U.S.C. § 362 to pursue this amended complaint." (Pl. Ex. 6, para, 17.)  This allegation incorrectly implies the bankruptcy court authorized Pinewood to pursue the amended cause of action in state court.

The complaint made numerous allegations against the named defendants but does not cite to any specific statute or legal principle upon which Pinewood is entitled to relief.  Important to the issue before the Court is that Pinewood, in its state court amended action, alleges in Count IV, "that [Debtor], LHSE and LHI are part of a fraudulent scheme to conspire to evade the payment of amounts due to Pinewood.  The complaint alleges that Grundy conspired with Kimbro and Alice in the use of these entities and the shifting of assets and operations to evade the payments due Pinewood and therefore is liable for all damages to Pinewood . . . in the amount of $1,300,000.00.  (Pl. Ex. 6.)  Count V alleges LHSE was operated with the Debtor's assets and personnel; therefore, LHSE succeeds to the liability of the Debtor.  The complaint also alleges that the shifting of the Debtor's operation constituted a de facto merger of the Debtor rendering LHSE liable for the debt to Pinewood.  (Pl. Ex. 6, para 49.)  Pinewood's state court complaint asks for in personam joint and several judgment for $1,300,000.00 against numerous defendants, including the Debtor, contrary to the terms of the order lifting the stay. (Pl. Ex. 6, para. 45 & 46.)

Pinewood made numerous allegations against numerous defendants claiming they received diverted assets of the Debtor.  Pinewood alleges that: "prior to the petition date, Alice and Kimbro operated [the Debtor] as their personal checkbook . . . and [used the Debtor's] funds to capitalize other business ventures" (Pl. Ex. 6, para. 34); other entities were formed using assets of the Debtor (Pl. Ex. 6, para. 35); the Debtor paid $50,000.00 for the benefit of a lease for

LHSE; the Debtor's outpatient clinics were reopened in the same location as LHSE. (Pl. Ex. 6, para. 36); Kimbro and Alice funneled hundred of thousands of dollars from the Debtor to purchase real estate for their personal benefit. (Pl. Ex. 6, para. 37); and LHSE was formed by Kimbro and Alice and was operated by them with the Debtor's assets, personnel, and employees to take over the Debtor's business operations. (Pl. Ex. 6, para. 48.)

On April 19, 2010, Pinewood filed a motion for preliminary injunction in the state court action, again inappropriately, alleging that it "was granted relief from the automatic stay pursuant to 11 U.S.C. § 362 to pursue this action." (Pl. Ex. 7.) The motion sought a preliminary injunction against the transfer of assets of LHSE and the other named defendants. On June 4, 2011, the Miller County Circuit Court granted the motion for injunction and enjoined the defendants from "the transfer of any assets, except the ordinary course of the individuals' and entities business pending trial." (Pl. Ex. 8.)

C.

TRIAL ON THE TRUSTEE'S REQUESTED INJUNCTION

Subsequently, on February 18, 2010, the Trustee filed this complaint for injunctive relief against Pinewood on the grounds that many of the allegations against Grundy and LHSE are the same allegations made by the Trustee in the Adversary Proceeding 09-ap-7023 which she settled and that Pinewood's lawsuit in Miller County Circuit Court against LHSE threatens the Trustee's settlement, and, therefore, should be enjoined. The Court denied the Trustee's motion for temporary restraining order and a hearing was held on January 19, 2011.

i.

Grundy's Testimony

9

Grundy was Chief Executive Office of LHSE. (Tr. at 37.) Prior to October 2006, he was employed with the Debtor, where he managed out-patient health services which involved overseeing financial and clinical operations. (Tr. at 37-38.) Prior to working for the Debtor, Grundy worked for Arkansas Medical Management Services, which was working for LHI. (Tr. at 45.) Though the physical address is different for LHSE and LHI; his job at LHSE and LHI was essentially the same. (Tr. at 45-46.) Grundy admits that LHSE's value is derived not from the physical assets but from the professional services rendered by para-professionals. (Tr. at 72.)

Grundy was aware of the lawsuit filed by the Trustee against LHSE and the resulting settlement. (Tr. at 38.) During the negotiations for the settlement, he spoke with Jim Smith (Smith), who is his and LHSE's attorney, and with Kimbro; however, Grundy stated he was not present for the negotiations. (Tr. at 48.) He did not authorize LHSE to settle with the Trustee and he does not know who did. (Tr. at 48-49.)

Even though LHSE is not obligated by the settlement to make any payments to the Trustee, the source of the funding of the settlement was to come from LHSE. (Tr. at 39 & 55.) Grundy acknowledged that LHSE is paying the obligation of Kimbro and Alice and not LHSE. (Tr. at 55.) LHSE has paid the Trustee approximately $146,000.00 toward the settlement. (Tr. at 55.) The money was paid to Smith in an account established by the name of LHSE escrow. (Tr. at 55.) Grundy did not interpret the state court injunction as preventing him from paying the settlement proceeds to the escrow account. (Tr. at 71.) Neither the profit and loss statement nor the balance sheet, account for the money paid on the settlement. (Tr. at 55-56.) During the same time period, LHSE also paid the tax liabilities of Kimbro and Alice and ATI. (Tr. at 56.)

LHSE made equity distributions of $1,063,000.00 from October 2006 to January 31,

2010, to ATI at the instruction of Alice's father, Robert Williams (Williams). (Tr. 50-51 & Pl. Ex. 16.) Williams is the managing member of LHSE. (Tr. at 67.) ATI is controlled by the Kimbro Stephens Insurance Trust and the Alice Stephens Insurance Trust. (Tr. at 71.) Grundy did not know where the money went after it was distributed to ATI but he "imagine[d]" it went for the benefit of Kimbro and Alice. (Tr. at 51 & 71.) He made the equity distributions even though he was aware of the May 2010 state court's injunction restraining LHSE from making any payments outside of the ordinary course of business. (Tr. at 54 & 69-70.)

LHSE paid legal expenses to defend individuals in the state court litigation as a result of the lawsuit filed by Pinewood in the sum of approximately $130,000.00. (Tr. at 40-43, 59-60 & Pl. Ex. 14.) This includes approximately $20,000.00 in legal expenses for Grundy's defense and approximately $50,000.00 for Kimbro and Alice's legal expenses. (Tr. at 59-60.) According to Grundy, payments to LHSE for attorneys representing individual parties are obligations of LHSE because, "[t]here was a resolution of the members for indemnification of related parties." (Tr. at 68.)

LHSE became unable to fund the settlement in November or December 2009, two months before Pinewood amended its complaint. (Tr. at 64.) Grundy stopped paying the Trustee on the settlement not because of Pinewood's injunction but because "cash flow didn't allow us to continue making contributions to the escrow account." (Tr. at 70.) According to Grundy, another reason LHSE could not fund the settlement was because of the difficulty working with Medicaid. (Tr. at 64.) Grundy had to choose between the settlement escrow and equity distribution and he chose equity distribution. (Tr. at 70.)

ii.

11

The Trustee's Testimony

The Debtor appeared to have no unencumbered assets when the Trustee took over. (Tr. at 88.) She filed ten adversary proceedings against various parties to recover pre-petition and post-petition transfers. (Tr. at 89.) She entered into the negotiations with five of the defendants to settle those adversary proceedings. (Tr. at 89-90.) Among the settled adversary proceedings was one against LHSE, one against Kimbro and Alice, and a separate adversary proceeding against Alice. (Tr. at 90.) The Trustee compared the language of her complaint against the language of Pinewood's state court complaint and noted that many of the allegations for relief were the same or similar to the Trustee's, especially the complaint against LHSE. (Tr. at 90-99.) She noted that Pinewood's complaint alleges a de facto merger of LHSE with the Debtor which allegedly renders LHSE liable for all of the Debtor's debts. (Tr. 93 & 96.)

The Trustee noted that the settlement agreement between her, Kimbro, Alice, and LHSE provides an "inchoate judgment lien" on all membership interests and assets of LHSE including all income. (Pl. Ex. 1A & Tr. at 98-99.) The settlement further provides that the Trustee would not exercise her inchoate right as long as Kimbro and Alice were not in default of the settlement agreement. (Tr. at 98-99.) The Trustee was to receive $750,000.00 under the settlement agreement and the source of these funds to pay the settlement was LHSE, although the obligation of LHSE was not included in the settlement agreement. (Tr. at 99.) The Trustee is unaware of any other source of funds to pay the settlement other than from LHSE. (Tr. at 106-107.) On February 12, 2010, Smith wrote the Trustee advising that, "[a]s a result of the appeal of the bankruptcy court order approving that settlement filed by [Pinewood] and the expenses LHSE is incurring in defending a lawsuit filed by [Pinewood] in the Circuit Court of Miller County,

12

Arkansas which essentially rehashes those matters raised in the bankruptcy proceeding, I anticipate that LHSE will not be able to make the payments required of it under the settlement agreement. . . ." (Pl. Ex. 11-W.)

LHSE has paid the Trustee $146,500.00 toward the settlement. (Tr. at 113 & Pl. Ex. 11.) According to the Trustee, the additional sum of $53,500.00 has been transferred to an escrow account managed by Smith, which has not yet been transferred to the Trustee.[2] (Tr. at 114 & Pl. Ex. 11.) The Trustee is aware that Kimbro is currently in Chapter 7 bankruptcy. (Tr. at 131.)

II.

DISCUSSION

Actions by creditors against non-debtor parties or entities are, by definition, not covered by the provisions of the automatic stay contained in 11 U.S.C. § 362. However, the bankruptcy court is not without broad powers pursuant to 11 U.S.C. § 105(a) to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." This power includes the power to enjoin litigation in other courts that threaten the integrity of the estate. Fisher v. Apostolou, 155 F.3d 876, 882-883 (7th Cir. 1998)(jurisdiction of the bankruptcy court to stay actions in other courts extends beyond claims by and against the debtors to include suits to which the debtor need not be a party, but which may affect the amount of property in the bankruptcy estate); see also Lynch v. John-Manville Sales Corp., 710 F.2d 1194 (6th Cir. 1983); LVT Steel Co., Inc., et al. v. Bd. of Educ. of Cleveland City Sch. Dist. (In re Chateaugay Co.,

---

[2] It appears that a check in the amount of $17,500.00 written on November 23, 2009, might have been included in the check for $146,500.00 written on November 30, 2009. (Pl. Ex. 11-0 & 1-R.) This would be in conflict with the Trustee's testimony. Therefore, the amount in escrow would be $36,000.00, rather than $53,500.00. It is not clear from the testimony and exhibits.

13

Reormar, Inc.), 93 B.R. 26 (Bankr. S.D.N.Y. 1988); 2 Collier on Bankruptcy ¶ 105.04 (Alan N. Resnick & Henry J. Sommer eds. 16th ed.).

The evidence indicates that Kimbro and Alice control LHSE as they did the Debtor through the ownership of two insurance trusts titled the Kimbro Stephens Insurance Trust and the Alice Stephens Insurance Trust. In turn, these two trusts control ATI. (Tr. at 71.) ATI owns 99% of LHSE and the Kimbro Stephens Insurance Trust owns 1% of LHSE. (Pl. Ex. 1-A.)

From the allegations in the Trustee's complaint, testimony at the hearing, and Pinewood's complaint, the picture emerges that before and after the Debtor filed Chapter 11 bankruptcy, Kimbro and Alice caused LHSE and other entities to be created and conveyed the Debtor's business to LHSE, continuing business under the name of LHSE. The Debtor provided health services to the poor and secured payments from government sponsored agencies such as Medicaid. The Debtor simply ceased to do business. When the change was first made, LHSE did not have a required provider number so it used the number given to a related entity. Grundy was the Chief Executive Office of the Debtor in October 2006 and when the operation shifted he assumed the same duties at LHSE. (Tr. at 37 & 49). LHSE business generated substantial income.

The Trustee's complaint sought relief under various provisions of the Bankruptcy Code; however, only 11 U.S.C. § 549 and 11 U.S.C. § 542 apply to transfers made post petition. See 5 Collier on Bankruptcy ¶ 544.01 (section 544 powers are limited by their terms and may not be used to assert post petition transfers). 11 U.S.C.§ 548 governs transfers made or incurred on or within two years before the filing of the petition. Those transfers made pre-petition may be recovered by the Trustee if fraudulent pursuant to 11 U.S.C. § 548 and 11 U.S.C. § 544.

Pinewood's amended complaint makes no mention of the legal authority for its allegations against LHSE. The core allegation by Pinewood against LHSE concerns the shifting of assets and operations from the Debtor to LHSE to evade payment to Pinewood, although Pinewood's complaint never alleges when these transfers took place.

Through the fog of these complex pleadings the facts emerge that Pinewood is actually attempting to pursue the Trustee's cause of actions under unstated state law theories. Some allegations include pre-petition fraudulent transfers of the Debtor's property which was subject to the Trustee's 11 U.S.C. § 548 cause of action which was settled. The allegations that the Debtor's property was transferred to LHSE was never proven because the Trustee settled this cause of action against a host of defendants including LHSE for a promise from Alice and Kimbro to pay up to $1,300,000.00 to the estate. The money is to be paid from the operation of LHSE at the instruction of Williams. (Tr. at 54.) Pinewood has no authority to maintain an action under 11 U.S.C. § 549 for any post-petition transfers. See Avalanche Maritime, Ltd. v. Parekh, Jr. (In re Parmetex, Inc.), 199 F.3d 1029, 1031 (9th Cir. 1999); Marrero v. Doral Fin. Corp., 382 B.R. 861, 866 (1st Cir. BAP 2008); 5 Collier on Bankruptcy ¶ 549.01 (Alan N. Resnick & Henry J. Sommer eds. 16th ed.). Nor does Pinewood possess the Trustee's cause of action for § 548 fraudulent pre-petition transfers. Nebraska State Bank v. Jones, 846 F.2d 477 (8th Cir. 1988); 5 Collier on Bankruptcy ¶ 548.06 (Alan N. Resnick & Henry J. Sommer eds. 16th ed.)

If Pinewood is permitted to indirectly assert the Trustee's causes of action against LHSE pursuant to a yet to be named state law remedy, it would jeopardize the Trustee's settlement. For example, if after settling with the Trustee for a sum of money, defendants are subsequently

15

sued by a creditor or multiple creditors of the Trustee's estate based on the same facts but under a different theory of state law, the Trustee's ability to settle would be seriously damaged. The comments of the Seventh Circuit in Fisher v. Apostolou in a case with similar facts apply here:

> In limited circumstances, the trustee may temporarily block adjudication of claims that are not property of the estate by petitioning the bankruptcy court to enjoin the other litigation, if it is sufficiently "related to" her own work on behalf of the estate. 28 U.S.C. § 1334(b). The jurisdiction of the bankruptcy court to stay actions in other courts extends beyond claims by and against the debtor, to include "suits to which the debtor need not be a party but which may affect the amount of property in the bankrupt estate," Zerand-Bernal Group, Inc. v. Cox, 23 F.3d 159, 161-62 (7th Cir. 1994), or "the allocation of property among creditors." In re Memorial Estates, Inc., 950 F.2d 1364, 1368 (7th Cir. 1992); see also Lawrence P. King, Collier on Bankruptcy ¶ 105[2]; In re Heath, 115 F.3d 521, 524 (7th Cir.1997)("related to" means "likely to affect"). To protect this jurisdiction, "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title.' 11 U.S.C. § 105(a), including a stay. Zerand-Bernal, 23 F.3d at 162.
>
> .   .   .
>
> While the Apostolou Plaintiffs' claims are not "property of" the Lake States estate, it is difficult to imagine how those claims could be more closely "related to" it. They are claims to the same limited pool of money, in the possession of the same defendants, as a result of the same acts, performed by the same individuals, as part of the same conspiracy.

155 F.3d 876, 882 (7th Cir. 1998). See also In re Davis, 730 F.2d 176 (5th Cir. 1984); In re Arrow Huss, Inc., 51 B.R. 853 (Bankr. D. Utah 1985); Old Orchard Inv. Co. v. A.D.I. Distributors, Inc. (In the Matter of Old Orchard Inv. Co.), 31 B.R. 599 (W.D. Mich. 1983).

Pinewood has a right to pursue its alter ego/veil piercing claims against the owners of LHSE; however, Pinewood does not have a right to pursue the Trustee's causes of actions. Pinewood unfairly attempts to obtain a judgment against LHSE and Grundy prior to the fixing of the Trustee's inchoate judgment lien. Therefore, Pinewood is hereby enjoined from pursuing LHSE and Grundy in state or federal court because Pinewood is pursuing the Trustee's settled

causes of actions.

    IT IS SO ORDERED.

*James G. Mixon*

Dated: 06/08/2011

_____
HON. JAMES G. MIXON
U. S. BANKRUPTCY JUDGE

DATED:_____

cc:    Renee S. Williams, Trustee
       Thomas S. Streetman, Esq.
       Judy Simmons Henry, Esq.
       Richard Cox, Trustee